IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

THE BANK OF NEW YORK MELLON,

    Plaintiff,

v.                                                   Adversary Case No. 19-1020

251 GOTHAM LLC,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

The United States District Court for the Southern District of Alabama referred this case to this court to resolve the defendant's motion to be dismiss (doc. 1-15[1]) "and all other proceedings, consistent with Article III of the Constitution." (*See* order, doc. 1, at p.8). Having carefully reviewed the briefing of the parties, the district court record, and the relevant law, the court denies the motion to dismiss for the reasons set out below.

Plaintiff The Bank of New York Mellon ("the Bank") sued the defendant 251 Gotham LLC ("251 Gotham") and other defendants in the district court on January 11, 2019. It subsequently amended its complaint (*see* doc. 1-10) on January 23, 2019 and dismissed all defendants but 251 Gotham.

The Bank alleges that it is the mortgagee of certain real property located in Nassau County, New York ("the Property"). The mortgagors are two individuals, Kathy LaFortune and James F. Padilla. While the mortgage was in effect, recorded, and unsatisfied, LaFortune and Padilla filed a joint chapter 13 bankruptcy case in this district, case number 11-4954 ("the first bankruptcy"). Their confirmed chapter 13 plan provided for the surrender of the Property. The

---

[1] The court uses the document numbers assigned when the case was transferred to bankruptcy court, not the document numbers assigned in district court.

Bank did not foreclose or take any steps during the first bankruptcy to obtain title to the Property. Post-confirmation, the court granted Padilla's motion to be dismissed from the first bankruptcy. LaFortune completed the chapter 13 case and received a discharge, and her case was closed in 2017.

Meanwhile, Padilla filed his own non-joint bankruptcy in this court, case number 16-1857 ("the second bankruptcy") in June 2016. He did not identify or list any interest in the Property on the schedules filed in the second bankruptcy. He conveyed his interest in the Property to 251 Gotham in February 2018, during the pendency of the bankruptcy. 251 Gotham then instituted a quiet title action in New York state court, which the state court ultimately resolved in its favor on statute of limitations grounds. The bankruptcy court dismissed the second bankruptcy at Padilla's request on February 27, 2019.

While the second bankruptcy was still pending, the Bank filed this case in the district court requesting, among other things, that the district court declare Padilla's transfer of the Property void because Padilla did not disclose his interest in the Property in the second bankruptcy and transferred that interest without bankruptcy court approval. 251 Gotham moved to dismiss the case. The district court, finding that this bankruptcy court at least had "related to" jurisdiction pursuant to 28 U.S.C. § 157(a), referred the case to this court for resolution, including a final resolution of the jurisdictional issue.[2] (*See* order, doc. 1).

---

[2] 28 U.S.C. § 157(a) states that a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." The district court for this district has adopted an Order of Reference dated August 25, 2015.

Analysis

251 Gotham argues that the court should dismiss this case on multiple grounds under Federal Rule of Civil Procedure 12 and for lack of standing. Alternatively, 251 Gotham requests a venue transfer to the Eastern District of New York. It also requests an award of sanctions. The court discusses each argument in turn below.

Subject-matter jurisdiction

The court construes 251 Gotham's motion to dismiss for lack of subject-matter jurisdiction as a factual attack, as opposed to a facial challenge based merely on the allegations in the amended complaint. The court thus may consider extrinsic evidence in its jurisdictional analysis. *See Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). "It may independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant." *Id.*

251 Gotham argues that the district court lacked subject-matter jurisdiction because (1) there is no "related to" or "in rem" jurisdiction under 28 U.S.C. § 1334; (2) there is no diversity jurisdiction; and (3) this action is barred by the *Rooker-Feldman* doctrine based on the New York state court decision in favor of 251 Gotham and against the Bank. Because the court finds that the district court has jurisdiction over this action under § 1334, it need not reach the issue of diversity jurisdiction.

The court further agrees with the district court that the *Rooker-Feldman* doctrine is inapplicable because this action "was commenced *before* the state proceedings ended." *See In re Bertram*, 746 F. App'x 943, 949 (11th Cir. 2018); *see also generally Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009).

3

A. "Related to" jurisdiction

The district court has original jurisdiction of all civil actions "related to cases under" the Bankruptcy Code. *See* 28 U.S.C. § 1334(b). The Bank was not required to initiate this action as an adversary proceeding in the second bankruptcy if "related to" jurisdiction exists. Rather, the district court could refer this action to this court pursuant to 28 U.S.C. § 157(a) and the Order of Reference, as it did here.[3]

"'The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.'" *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000) (citation omitted). "The proceeding need not necessarily be against the debtor or the debtor's property." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (citation and quotation marks omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (citation and quotation marks omitted). "The key word in th[is] test is 'conceivable,' which makes the jurisdictional grant extremely broad." *See id.* The test is a liberal one. *See id.* The test is applied at the time of the commencement of the civil action. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (citation omitted).[4]

---

[3] The same is true if "in rem" jurisdiction exists under 28 U.S.C. § 1334(e).
[4] Although the Supreme Court decided this case in the context of diversity jurisdiction, the court has not found any authority that the Supreme Court's reasoning would not also apply in the context of jurisdiction pursuant to § 1334(b).

4

The court does not have "related to" jurisdiction based on the terms of the confirmed plan in the first bankruptcy, because that bankruptcy case was closed prior to the commencement of this case and has not been re-opened. *See, e.g.*, *Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 327 (M.D. Ala. 1994); *Al-Rayes v. Willingham*, No. 3:15-cv-107-J-34JBT, 2016 WL 9527956, at *2 (M.D. Fla. Mar. 11, 2016); *Matter of Dennis*, AP 17-05200-LRC, 2017 WL 4457414, at *2 (Bankr. N.D. Ga. Oct. 4, 2017).

Nevertheless, when Padilla was dismissed from the first bankruptcy, his interest in the Property revested in him. *See* 11 U.S.C. § 349. His interest in the Property became property of the second bankruptcy estate and was property of the bankruptcy estate at the time Padilla transferred his interest in the Property to 251 Gotham. *See* 11 U.S.C. § 541(a) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case[]" "wherever located and by whomever held"). Padilla had an ongoing duty throughout the second bankruptcy to disclose property of the estate, but he never disclosed the Property. *See, e.g.*, *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010); *Jones v. Savage Servs. Corp.*, No. 2:17-CV-01570-AKK, 2019 WL 2058715, at *3 (N.D. Ala. May 9, 2019); *see also* 11 U.S.C. § 554(d) (an undisclosed asset remains property of the estate).

The confirmed plan in the second bankruptcy stated, "Property of the Estate shall revest in the Debtor(s) upon discharge or dismissal of the case." Although Padilla voluntarily dismissed the second bankruptcy in February 2019, the bankruptcy was pending when Padilla transferred the Property, when the Bank filed this case, and when the Bank filed its amended complaint. Thus, the Property was still property of the bankruptcy estate at the time the Bank filed this case. The Bank now seeks a declaratory judgment that the transfer from Padilla to 251 Gotham was void.

5

The court must decide whether the outcome of this action could conceivably have an effect on the estate that was being administered in the second bankruptcy. Subject to certain limitations, a chapter 13 debtor has "the rights and powers of a trustee under section[] 363(b) . . . ." *See* 11 U.S.C. § 1303. 11 U.S.C. § 363(b) governs the sale of property of the debtor's estate: "The trustee, after notice and a hearing, may . . . sell, . . . other than in the ordinary course of business, property of the estate . . . ." In general, the sale of an individual debtor's "real property is not in the ordinary course of business and court approval is required by § 363(b)." *See In re Smith*, 352 B.R. 500, 503 (Bankr. N.D. Ala. 2006); *see also In re McCann*, 537 B.R. 172, 177-78 (Bankr. S.D.N.Y. 2015). The debtor "could not have entered into an enforceable contract with [a buyer] to sell the property absent such approval." *See In re Smith*, 352 B.R. at 503; *see also In re Fid. Standard Mortg. Corp.*, 839 F.2d 1517, 1522 (11th Cir. 1988).

"If a debtor, acting with the powers of a trustee, disposes of property out of the ordinary course of business without prior court approval, then the transaction may be unwound as invalid." *In re Zeman*, No. 09-52559-C, 2010 WL 3123144, at *2 (Bankr. W.D. Tex. Aug. 6, 2010); *see also, e.g.*, *In re DeRosa-Grund*, 544 B.R. 339, 367-68 (Bankr. S.D. Tex. 2016) (transfer of property of estate without court approval was void); *In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 379 (Bankr. N.D. Okla. 2004) (stating in the context of § 363(b) that "[t]ransactions requiring, but lacking, approval may be set aside as void"). "Nor does it matter that the bankruptcy case in which the purported transaction took place has since been dismissed. What matters is that the debtor's actions at the time they were taken were not authorized." *In re Zeman*, 2010 WL 3123144, at *2.

251 Gotham's argument that the outcome of this action could not have an effect on the estate because Padilla no longer owns the Property assumes that Padilla's sale of the Property

was valid in the first place. Regardless of whether the applicable statute of limitations for the Bank to foreclose under New York state law had run, the Property was property of the bankruptcy estate when Padilla filed for bankruptcy and when Padilla transferred the Property to 251 Gotham. 251 Gotham's arguments that there is no equity in the Property and that the second bankruptcy was a chapter 13 reorganization – not chapter 7 liquidation – do not convince the court that it lacks jurisdiction. The disposition of an undisclosed asset of the estate without court approval clearly has an effect on the second bankruptcy under the liberal standard for "related to" jurisdiction.

B. "In rem" jurisdiction

Under 28 U.S.C. § 1334(e)(1), the district court (and by reference the bankruptcy court) in the district in which a bankruptcy case "is commenced or is pending" has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of [the bankruptcy] case, and of property of the estate . . . ." The court does not have jurisdiction based on the first bankruptcy, which was no longer pending at the time the Bank filed this action.

With respect to the second bankruptcy, as outlined above, Padilla's interest in the Property was still estate property at the time the Bank filed this action. The disposition of that Property is squarely within the exclusive jurisdiction of this court.[5] *See, e.g.*, *In re Ford*, 296 B.R. 537, 548 (Bankr. N.D. Ga. 2003); *In re DeRosa-Grund*, 544 B.R. at 367; *see also Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 969 (11th Cir. 2012); *In re Icenhower*, 757 F.3d 1044, 1050 (9th Cir. 2014).

---

[5] The court questions whether Padilla is an indispensable party to this proceeding. However, 251 Gotham's motion did not include Rule 12(b)(7).

7

*In re Noletto*, 244 B.R. 845 (Bankr. S.D. Ala. 2000), does not compel a different result. In that case, Judge Mahoney found that a purported class action challenging certain postpetition fees and expenses charged by a creditor to debtors was not within the exclusive jurisdiction of the court. In distinguishing the class claims from claims over which the court has exclusive jurisdiction, she recognized:

> First, exclusive *in rem* jurisdiction is an important aspect of bankruptcy jurisdiction. <u>Second, the efficacy of bankruptcy depends on the existence of one court to control assets and distribute them in accordance with the priority schedule established by the Bankruptcy Code. Section 1334(e) grants this power exclusively to the 'home court."</u>

*Id.* at 853 (emphasis added). By not revealing the Property at any point in the second bankruptcy, despite an ongoing duty to do so, and then disposing of the Property – which was estate property – without court approval, Padilla effectively usurped the exclusive jurisdiction of this court and potentially committed bankruptcy fraud. *See United States v. Goodstein*, 883 F.2d 1362, 1366-67 (7th Cir. 1989) (transfer of property in bankruptcy without notice to creditors or bankruptcy court approval under § 363(b) could be deemed fraudulent transfer of property of estate under criminal bankruptcy fraud statute).

It again makes no difference that the underlying bankruptcy "has since been dismissed. What matters is that the debtor's actions at the time they were taken were not authorized." *In re Zeman*, 2010 WL 3123144, at *2. If the law was otherwise, a debtor could "game" the system by hiding assets from the estate, transferring those assets without court approval, and then simply dismissing his bankruptcy to avoid the consequences of doing so.

<u>Standing</u>

To have standing to pursue a claim, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). It is the plaintiff's burden to establish these elements, and "at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *See id.* (citation, quotation marks, and ellipses omitted).

The amended complaint establishes these elements. 251 Gotham's "no harm, no foul" contention that the Bank's mortgage was unaffected by the transfer fails to acknowledge that the requirements of § 363(b) were ignored. 251 Gotham's position would allow a debtor (and a transferee such as 251 Gotham) to take advantage of the bankruptcy system with no means of redress. The Bank has alleged an injury in fact by the transfer of property in which it had an interest without following the proper procedures, an injury that is not just "fairly traceable" but directly traceable to the challenged conduct of the failure to obtain bankruptcy court approval of the transfer. Further, the court is not persuaded that the doctrines of *Rooker-Feldman* (discussed above) or *res judicata* (discussed below) mean that this court cannot provide any redress. The redress available – specifically requested by the Bank – would be for the court to declare the transfer void.

<u>Personal jurisdiction</u>

The court's "in rem" jurisdiction over the Property effectively renders 251 Gotham's personal jurisdiction argument moot. Regardless, because the court has determined that bankruptcy jurisdiction (both "related to" and "in rem") exists, nationwide service of process is available under Federal Rule of Bankruptcy Procedure 7004(d). *See* Fed. R. Bankr. P. 7004(f); *DePaola v. Nissan N. Am., Inc.*, No. 1:04CV267-W, 2005 WL 2122265, at *5 (M.D. Ala. Aug. 29, 2005). Whether 251 Gotham is subject to personal jurisdiction "depends upon whether this court's assertion of such jurisdiction comports with the due process clause of the Fifth

9

Case 19-01020    Doc 4    Filed 06/18/19    Entered 06/18/19 09:50:03    Desc Main
Document    Page 9 of 14

Amendment." *See DePaola*, 2005 WL 2122265, at *6. This analysis "focuses on the fairness and reasonableness of requiring the defendant to litigate in a particular forum." *See id.* "[I]n conducting th[is] analysis, a court must examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state." *See id.* (citation and quotation marks omitted).

"A defendant's 'minimum contacts' with the United States do not . . . automatically satisfy" due process. *See id.* (citations and quotation marks omitted). "There are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." *Id.* (citation and quotation marks omitted). "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997); *see also In re McCallan*, 599 B.R. 361, 367 (Bankr. M.D. Ala. 2019).

The defendant must show "that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [the defendant] unfairly is at a severe disadvantage in comparison to his opponent." *See BCCI*, 119 F.3d at 948 (citation and quotation marks omitted). If "a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *See id.*

> In evaluating the federal interest, courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these polices, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

10

*Id.*

The court finds that is has personal jurisdiction over 251 Gotham. First, 251 Gotham has sufficient minimum contacts with the United States. Second, 251 Gotham has made no showing of inconvenience which would rise to a constitutional level. 251 Gotham's principal member submitted an affidavit with the motion to dismiss stating that 251 Gotham would be "disadvantaged by litigating in a state very far away from where it is at home" and that it is "a small entity of limited financial resources . . . ." A lack of minimum contacts with the State of Alabama is not the proper standard, but this court routinely allows parties and attorneys to participate telephonically in hearings and the court intends to do so in this case to the extent possible.[6] Finally, even if 251 Gotham had shown inconvenience rising to a constitutional level, the federal interest in litigating this dispute here – in the federal bankruptcy court where the debtor failed to obtain the approval explicitly required by the federal Bankruptcy Code to dispose of property of the bankruptcy estate – outweighs the burden imposed on 251 Gotham.

Venue

28 U.S.C. § 1334(e) gives this court exclusive jurisdiction over property of the estate wherever located and makes venue proper here. Venue is also proper under 28 U.S.C. § 1409.

The court considers 251 Gotham's venue transfer request under 28 U.S.C. § 1412.[7] *See, e.g.*, *In re Bruno's, Inc.*, 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998). That section provides that the court may transfer a case to another district "in the interest of justice or for the convenience

---

[6] The court also notes that 251 Gotham voluntarily entered into a transaction with an Alabama resident who was a debtor in a bankruptcy pending in Alabama, which information 251 Gotham could have easily obtained with a minimal amount of due diligence.

[7] 251 Gotham cites 28 U.S.C. § 1404. "The statutory language of sections 1404 and 1412 are similar and courts apply the same basic factors when considering motions to transfer under either section." *In re Holmes*, 306 B.R. 11, 14 (Bankr. M.D. Ga. 2004). The court's decision would remain the same applying either statute.

11

of the parties." "'Transfer of venue pursuant to § 1412 requires a case-by-case analysis that is subject to broad discretion of the court.'" *In re Johnson*, No. 16-04196-DSC7, 2018 WL 2670469, at *15 (Bankr. N.D. Ala. May 23, 2018) (citation omitted). "The power to transfer a case . . . should be exercised cautiously." *See id.* (citation and quotation marks omitted); *see also id.* at *17.

When deciding the "interest of justice" prong, "the courts consider whether the transfer of venue will promote the efficient administration of the estate, judicial economy, timeliness, and fairness." *See id.* at *15 (citation and quotation marks omitted).

> The courts have applied the following factors in order to determine whether a transfer is in the interest of justice:
>
> (a) Economics of estate administration;
>
> (b) Presumption in favor of the 'home court;'
>
> (c) Judicial efficiency;
>
> (d) Ability to receive a fair trial;
>
> (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws;
>
> (f) Enforceability of any judgment rendered; and
>
> (g) Plaintiff's original choice of forum.

*Id.*

For the "convenience" prong, "'[m]erely shifting the balances of inconveniences from one party to another is not sufficient to justify a transfer of venue.'" *See id.* at *17 (citation omitted).

> The factors applicable to th[is] prong . . . are
>
> (a) Location of the plaintiff and defendant;

(b) Ease of access to necessary proof;

(c) Convenience of witnesses;

(d) Availability of subpoena power for the unwilling witnesses; and

(e) Expense related to obtaining witnesses.

*Id.*

251 Gotham's venue arguments are similar to its personal jurisdiction arguments about the inconvenience of litigating in Alabama. Having analyzed the above factors, the court declines 251 Gotham's transfer request.[8]

Failure to state a claim

In deciding a motion to dismiss for failure to state a claim, the court accepts the allegations of the amended complaint as true and construes the facts in the light most favorable to the plaintiff. *See Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1268 (11th Cir. 2019); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). The relevant inquiry is whether the plaintiff has stated a plausible claim for relief. *See Holzman*, 920 F.3d at 1268; *Almanza*, 851 F.3d at 1066.

251 Gotham argues that the doctrine of *res judicata* bars this action based on the New York state court decision. Because the state court action concluded during the pendency of this action, preclusion law applies. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). This court must give the same preclusive effect to the state court judgment that a New York court would give. *See id.*

Taking the allegations in the amended complaint as true, the state court lacked jurisdiction to make any determination regarding property of the bankruptcy estate. New York's

---

[8] Again, the court emphasizes its willingness to hearings telephonically to the extent practicable.

highest court has recognized that "[a] judgment . . . issued without subject matter jurisdiction is void, and that defect may be raised at any time and may not be waived." *See Editorial Photocolor Archives, Inc. v. Granger Collection*, 463 N.E. 2d 365, 368 (N.Y. 1984); *see also In re Metro. Transp. Auth.*, 823 N.Y.S. 2d 88, 90-91 (N.Y. App. Div. 2006). At a minimum, the court finds that the Bank has stated a claim a plausible claim for relief. *Cf. McDougald v. Jensen*, 786 F.2d 1465, 1485-87 (11th Cir. 1986).

Sanctions

Because the court is denying the motion to dismiss, it also denies 251 Gotham's request for sanctions.

Conclusion

To the extent the court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The court therefore denies the defendant's motion to dismiss. Defendant is ordered to file an answer within 14 days pursuant to Bankruptcy Rule 7012(a). By separate order, the court will set this case for a telephonic scheduling conference.

Dated: June 18, 2019

_____
HENRY A. CALLAWAY
CHIEF U.S. BANKRUPTCY JUDGE