# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATION OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-J2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-J2,<br><br>       *Plaintiff*,<br>v.<br><br>251 GOTHAM LLC, KATHY LAFORTUNE, AND JAMES F. PADILLA<br><br>       *Defendants*. | BANKR. ADV. PRO. NO. 19-1020<br><br><br><br>(U.S. DISTRICT COURT CIVIL ACTION NO. 19-cv-00010-WS)[1] |

## PLAINTIFF'S RESPONSE TO DEFENDANT KATHY LAFORTUNE'S MOTION TO DISMISS

Plaintiff The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certification of CWALT, Inc., Alternative Loan Trust 2007-J2, Mortgage Pass-Through Certificates, Series 2007-J2 ("Plaintiff") files this *Response* in opposition to the *Notice of Motion to Dismiss* [Bankr. Dkt. No. 29][2] (the "Motion") filed by defendant Kathy LaFortune ("LaFortune") and states as follows:

## I.    INTRODUCTION

1.    In her motion to dismiss, LaFortune challenges: (a) the Court's subject matter jurisdiction, (b) the Court's assertion of personal jurisdiction over her, (c) the legal viability of Plaintiff's claims, and (d) Plaintiff's standing. Many of LaFortune's arguments are familiar ones

---

[1] Plaintiff commenced this action in the United States District Court for the Southern District of Alabama where this matter was assigned Case No. 19-cv-00010-WS. On April 19, 2019, the District Court entered an order referring this matter to the United States Bankruptcy Court for the Southern District of Alabama and this matter was assigned Adversary Proceeding No. 19-1020. Accordingly, both case numbers are identified in the case caption, above.

[2] References to bankruptcy docket entries are to those in the above-captioned bankruptcy proceeding No. 19-1020 unless otherwise noted. Capitalized terms used but not defined herein are intended to have the meanings ascribed to them in Plaintiff's live Complaint.

1

that her co-defendant 251 Gotham LLC ("251 Gotham") made previously and that this Court already has rejected. The Court should do so again and decline to dismiss Plaintiff's claims against LaFortune.

2.    Subject matter jurisdiction. LaFortune places much emphasis upon the closure of her bankruptcy in urging the absence of subject matter jurisdiction. LaFortune ignores, however, that Plaintiff claims that LaFortune surrendered her interest in the Property and by attempting to convey the Property in defiance of her confirmed plan has violated this Court's orders. That is a matter well within the subject matter jurisdiction of this Court as are Plaintiff's claims alleging that LaFortune's conduct violated the bankruptcy law.

3.    Personal jurisdiction. There is personal jurisdiction over LaFortune because the relevant question is not her present connection to the State of Alabama, but, rather, her undisputed connection to the United States. Service of process was completed successfully pursuant to Bankruptcy Rule 7006(e). LaFortune, in any event, filed her bankruptcy in this judicial district and the claims against her arise from or relate to her violations of the very orders that she procured from this Court.

4.    Failure to state a claim. LaFortune's 12(b)(6) challenge is not a challenge to the viability of a legal claim against her at all, but instead a challenge to one of the forms of relief that Plaintiff has requested. This is not a proper basis for dismissal.

5.    Plaintiff's standing. LaFortune's lack of standing argument appears to rest upon the closure of her bankruptcy. This has nothing to do, however, with whether Plaintiff has suffered an injury that confers standing. Plaintiff's claim against LaFortune is merely the other side of the coin that is Plaintiff's claim against 251 Gotham and the Court already has rejected the argument that Plaintiff lacks standing. Put simply, LaFortune's attempted conveyance to 251

2

Gotham was in violation of her surrender of the Property that, under controlling Eleventh Circuit precedent, was a relinquishment to Plaintiff of her rights in and to the Property. LaFortune's actions have deprived Plaintiff of the rights and benefits inherent in her surrender.

## II.     ARGUMENT AND AUTHORITIES

**A.     This Court has subject matter jurisdiction pursuant to sections 1334(b) and 1331.**

6.     Focusing exclusively on the closed Joint Bankruptcy Case, and ignoring the Padilla Bankruptcy Case as well as the District Court's prior opinion in this case, LaFortune contends this Court lacks section 1334(b) jurisdiction because there can be no conceivable impact on any bankruptcy estate.   In addition, LaFortune takes the fundamentally incorrect position that "section 1331 does not confer subject matter jurisdiction over federal bankruptcy law questions."  Dkt. No. 29 at ¶ 31.  LaFortune does not discuss the impact of section 1334(e) grant of exclusive in rem jurisdiction whatsoever.

> *(i)     Section 1334(b) jurisdiction exists over the causes of action against LaFortune because they necessarily involve the interpretation, implementation, consummation, execution or administration of the confirmed plan in the Joint Bankruptcy Case.*

7.     Regarding section 1334(b) jurisdiction and the impact of the Joint Bankruptcy Case's closure, the District Court has already rejected similar arguments raised by 251 Gotham: "The defendant apparently assumes that 'related to' jurisdiction expires with the confirmation of a plan and/or ***the closing of a bankruptcy case***.  ***The defendant is incorrect***."  *See* Case No. 1:19-cv-00010-WS-N, Dkt. No. 26 at p. 6.  With respect to "related to" jurisdiction under section 1334(b), the District Court here has already sided with courts holding that "[m]atters that affect the interpretation, implementation, consummation, execution or administration of the confirmed plan will typically have the requisite close nexus."  *Id.* (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3rd Cir. 2004), among other cases); *accord. id.* at p. 7 ("[I]n the post-confirmation

3

context, the test for 'related to' jurisdiction is not benefit to the creditors but impact on the interpretation, implementation, consummation, execution or administration of the plan."). Moreover, specifically referencing the Joint Bankruptcy Case, the District Court also already recognized the applicability of binding Supreme Court precedent that this Court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders" no matter the passage of time. *Id.* at p. 7 (quoting *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009)).

8.     The Borrower Defendants' chapter 13 plan provided for surrender of the Property. *See* Case No. 11-bk-04954 at Dkt. No. 2, p. 3.  This Court entered an order confirming that plan, which finalized the surrender of the Property. *Id.* at Dkt. No. 18.  This Court's confirmation order was indisputably binding on LaFortune.  *See* 11 U.S.C. § 1327.  LaFortune's attempted conveyance to 251 Gotham of her previously surrendered interest in the Property is inconsistent with the terms of the binding confirmation order in the Joint Bankruptcy Case approving the surrender. *See In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016) (holding that "'surrender' means 'giving up of a right or claim,'" and that "[t]he retention of property that is legally insulated from collection is inconsistent with surrender") (quotations and citation omitted).

9.     Plaintiff's causes of action against LaFortune both concern the impact and effect of the order confirming the Joint Bankruptcy Case's plan and surrender provision, and necessarily involve the "interpretation, implementation, consummation, execution or administration of the confirmed plan" to have the required nexus for purposes of section 1334(b) jurisdiction. *See* Case No. 1:19-cv-00010-WS-N, Dkt. No. 26 at p. 6 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d at 166–67, among other cases); *see also id.* at p. 7 ("[I]n the post-confirmation context, the test for 'related to' jurisdiction is not benefit to the creditors but impact on the interpretation, implementation, consummation, execution or administration of the plan.").

4

10.     In addition, Plaintiff's abuse of process claim against LaFortune involves her actions in both the Joint Bankruptcy Case as well as her conduct and culpability in connection with the Padilla Bankruptcy Case.  Notwithstanding the automatic stay being in place over the Property during the Padilla Bankruptcy Case, LaFortune  participated in the atttempted conveyance—all the while concealing the attempted sale from creditors and this Court. LaFortune does not challenge this Court's section 1334(b) jurisdiction in relation to the Padilla Bankruptcy Case and her conduct in connection therewith.  Perhaps for good reason as both the District Court and this Court have also both held that "related to" jurisdiction exists, without question, over questions pertaining to the Padilla Bankruptcy Case.  *See, e.g.*, Case No. 1:19-cv-00010-WS-N, Dkt. No. 26 at pp. 6–7; Order Denying Motion to Dismiss, Bankr. Dkt. No. 4 at pp. 6–7.

   *(ii)     LaFortune's assertion that section 1331 jurisdiction cannot exist over federal bankruptcy law questions is incorrect.*

11.     LaFortune takes the novel position that "section 1331 does not confer subject matter jurisdiction over federal bankruptcy law questions."  Dkt. No. 29 at ¶ 31.  LaFortune's position is fundamentally incorrect.

12.     Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Certainly the Bankruptcy Code, codified under at Title 11 of the United States Code, qualifies as laws of the United States.  *See id.*; *see also Grable & Sons Metal Prods., Inc. Darue Engineering & Mfg.*, 545 U.S. 308, 311–12, 314–15 (2005) (there is subject matter jurisdiction "arising under the Constitution, laws, or treaties of the United States," even with respect to a state law quiet title claim because federal question jurisdiction does not "always require a federal

Case 19-01020   Doc 41   Filed 09/06/19   Entered 09/06/19 23:13:50   Desc Main
Document     Page 5 of 20

cause of action." It was sufficient that a federal statute provided the rule of decision that defined the rights of the parties.)

13.     Section 1331 jurisdiction plainly exists with respect to claims that have their origins in the Bankruptcy Code. LaFortune appears to believe that the Bankruptcy Code exists in an environment that is sealed off from federal question jurisdiction generally and that section 1331 has no application to claims that invoke the Bankruptcy Code. LaFortune provides no support for this proposition and there is none. "Nor are grants of jurisdiction normally exclusive: for example, the grant of federal question jurisdiction in 28 U.S.C. § 1331 is not exclusive of other jurisdictional bases." *In re Salem Mortg. Co.*, 783 F.2d 626, 632 n.15 (6th Cir. 1986). Indeed, the Eleventh Circuit has recognized that sections 1331 and 1334 both provide district courts with original jurisdiction over federal questions involving bankruptcy laws. *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005) (per curiam); *see also Roberts v. Am. Bank & Tr. Co.*, 835 F. Supp. 2d 183, 206 (E.D. La. 2011) (recognizing that "the Eleventh Circuit has held that district courts do have jurisdiction over such claims [involving the automatic stay] by virtue of the grant of original jurisdiction over Title 11 cases found in 28 U.S.C. § 1331 and 1334") (citing *Justice Cometh, Ltd.*, 426 F.3d at 1343).

14.     LaFortune cites to *Scarborough v. Carotex Constr., Inc.*, 420 Fed. App'x 870 (11th Cir. 2011), among other cases, as supporting her position that section 1331 cannot apply to federal questions involving bankruptcy laws. *See* Dkt. No. 29 at ¶ 31 (citing *Scarborough*, 420 F. App'x at 873). To the contrary, *Scarborough* did not involve the Bankruptcy Code at all. Rather, the *Scarborough* plaintiff "pled only diversity jurisdiction under 28 U.S.C. § 1332 and ***did not plead federal question jurisdiction*** under 28 U.S.C. § 1331." *Id.* at 871 (emphasis added). Although the Miller Act was arguably implicated in the lawsuit, the *Scarborough*

6

plaintiff's complaint did "not mention or cite the Miller Act, nor [did] it allege that the [p]roject was a public work of the federal government," as was necessary for any federal question to be presented. *Id.* at 874. This decision has no bearing upon whether there is section 1331 jurisdiction with respect to a claim expressly invoking and based upon the Bankruptcy Code.

15.     Just as *Scarborough* does not remotely support LaFortune's legal argument, neither do the other two cases she relies upon. In the first case, *West-Anderson v. Saunders*, 290 B.R. 399 (D. Kan. 2003), the court found section 1331 jurisdiction lacking because "[p]laintiff's claim does not arise under federal law. [p]laintiff's claim is a state law claim for libel and slander" that merely arose during the course of a bankruptcy case. *Id.* at 400. Further, that court found section 1334 jurisdiction lacking because "[p]laintiff is not the debtor in bankruptcy, and the debtor is not a party in this case. [p]laintiff simply prepared the debtor's Chapter 13 bankruptcy petition." *Id.* at 400–01. There is nothing remarkable about the *West-Anderson* court's holding that a debtor's petition-preparer's state, common law libel and slander claims did not rise to the level of section 1331 or 1334 jurisdiction.

16.     The other remaining case LaFortune's Motion cited—*In re Otero Mills, Inc.*, 1983 Bankr. LEXIS 6781 (Bankr. Dist. N.M., Feb. 18, 1983), *rev'd and remanded by Otero Mills, Inc. v. Sec. Bank & Tr.*, 28 B.R. 386 (D.N.M. 1983)—is just as conspicuously misconstrued as the other cases LaFortune cited. The *Otero Mills* opinion arose in the aftermath of the Supreme Court's *Northern Pipeline* decision in 1982 declaring a now-repealed jurisdictional statute, section 28 U.S.C. § 1471, unconstitutional. The bankruptcy court previously issued an injunction preventing a party from collecting a state court judgment. *See id.* at *1. Following the *Northern Pipeline* decision that arguably invalidated section 1471, the bankruptcy court questioned what other source of jurisdiction existed for it to order the injunction to remain in

7

place. *See id.* at *8. The bankruptcy court then adopted another court's decision "that in the face of clear congressional intent that 28 U.S.C. § 1471 be the sole grant of subject matter jurisdiction, any jurisdiction which did exist under Section 1331 would be 'inconsistent with the Bankruptcy Reform Act of 1978.'" *Id.* (citation omitted).

17.     LaFortune's Motion cites *Otero Mills* for the proposition that "that neither section 1331 nor any of its predecessors were designed to grant subject matter jurisdiction of actions arising under federal bankruptcy law." Dkt. No. 29 at ¶ 31 (citing *In re Otero Mills, Inc.*, 1983 Bankr. LEXIS 6781 at *8–9). Unmentioned by LaFortune's Motion is that the bankruptcy court's decision in *Otero Mills, Inc.* was reversed by the district court on appeal. *See generally Otero Mills, Inc. v. Sec. Bank & Tr.*, 28 B.R. 386, 387 (D.N.M. 1983). In any event, the bankruptcy court's decision in *Otero Mills* rested on the conclusion that section 1471 was to be the sole grant of bankruptcy jurisdiction, section 1471 was both found unconstitutional and has been repealed, and the *Otero Mills* decision itself reversed. *See generally id.* Section 1334(b) had not even been enacted in its present form at the time of the *Otero Mills* decisions, *see id.* at 388, and LaFortune points to no authority suggesting that section 1334(b) was intended to supersede section 1331 jurisdiction.

18.     No matter the fact that none of the authorities LaFortune cites in her Motion actually support her novel jurisdictional theories, the view point in the Eleventh Circuit remains that sections 1331 and 1334 both provide district courts with original jurisdiction over federal questions involving bankruptcy laws. *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d at 1343. Where, as here, the federal bankruptcy questions at issue concern multiple bankruptcy cases and orders issued therein, section 1331 jurisdiction is properly invoked.

Case 19-01020    Doc 41    Filed 09/06/19    Entered 09/06/19 23:13:50    Desc Main
Document      Page 8 of 20

**B.** **LaFortune is subject to personal jurisdiction in the Southern District of Alabama.**

19.    LaFortune's personal jurisdiction challenge is predicated on the fact that she is now a Florida resident with no contacts with Alabama, and "any such contacts that may have existed were destroyed at the end of the Joint Bankruptcy." Dkt. No. 29 at ¶ 39. LaFortune does not attempt to address the fact that the Property, and her interest in it that she attempted to convey to 251 Gotham, was subject to this Court's exclusive in rem jurisdiction during the Padilla Bankruptcy Case by virtue of section 1334(e).

20.    No matter. LaFortune was served with process in Florida under Federal Rule of Bankruptcy Procedure 7004 on August 28, 2019. *See* Dkt. No. 40. Bankruptcy Rule 7004(d) authorizes nationwide service of process. *See* FED. R. BANKR. P. 7004(d) ("The summons and complaint and all other process except a subpoena may be served anywhere in the United States."). In turn, with respect to establishing personal jurisdiction over a party, Rule 7004(f) provides that "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons . . . in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code." FED. R. BANKR. P. 7004(f)

21.    The import of Bankruptcy Rule 7004 cannot be overlooked in establishing this Court's personal jurisdiction over LaFortune. Bankruptcy courts have held that Bankruptcy Rule 7004(d)'s authorization for nationwide service of process extends personal jurisdiction anywhere in the United States over any defendant incorporated in the United States. *See, e.g.*, *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 358–59 (Bankr. S.D. Tex. 2009). Similarly, the Eleventh Circuit has held that when nationwide service of process is at issue, the relevant "forum" for purposes of performing a constitutional fairness inquiry is the nation as a whole rather than any specific state.

9

*See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946–47 (11th Cir. 1997) (holding that under a nationwide service of process statute, in determining personal jurisdiction "[a] court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis"). The Eleventh Circuit went on to "emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 947.

22.     Here, through Bankruptcy Rule 7004(d) and (f), the Court has personal jurisdiction over LaFortune because she has been served, *see* Dkt. No. 40, unless she can demonstrate a highly unusual case of inconvenience, *see Republic of Panama*, 119 F.3d at 946–47. LaFortune's core arguments in favor of unfairness are that the Joint Bankruptcy Case closed, she now resides in Florida (although she does not say whether she resided in Florida when the lawsuit was commenced), and she is of limited financial means. *See generally* Dkt. No. 29 at Ex. A.

23.     Critically, however, LaFortune's declaration asserts that "[a]t no time in my bankruptcy did I irrevocably surrender my interest in the Subject Property." *Id.* at ¶ 7. The surrender of her interest in the Property occurred during her Joint Bankruptcy Case in this Court, and the effect of that act of surrender is a key, common issue in Plaintiff's claims against LaFortune. Because she now directly contests the legal effect of the surrender that this Court approved in the order confirming her plan, it would be fundamentally unfair for the Court to find personal jurisdiction lacking simply because she moved to Florida. And while she asserts that she is of limited financial means to defend the case, the fact that LaFortune is now represented by the same counsel as 251 Gotham suggests that 251 Gotham has taken up her defense.

24.     LaFortune consented to this Court's exercise of personal jurisdiction over issues involving her and her property, including the Property, when she filed for Bankruptcy here. At issue in this litigation is the effect of orders entered during LaFortune's bankruptcy here. This Court is in the best position to interpret and enforce those orders—particularly where LaFortune denies their irrevocable effect. Fundamental fairness points toward this Court's exercise of jurisdiction. To hold otherwise would be tantamount to finding that a party can obtain all the benefits of bankruptcy in a jurisdiction but later avoid accountability there by moving elsewhere. Personal jurisdiction over LaFortune is appropriate and constitutionally acceptable under these circumstances.

## C.     Plaintiff has stated a cognizable claim against LaFortune for civil contempt for abuse of bankruptcy process.

25.     Like 251 Gotham previously contended in its opposition to Plaintiff's motion for leave to amend its complaint, LaFortune contends that Plaintiff has failed to state a claim for abuse of bankruptcy process against her. Like 251 Gotham, LaFortune also suggests that no private right of action exists under section 105.

26.     There is strong authority in this District that a Plaintiff may state a legally viable claim for relief invoking section 105 where a defendant is alleged to have violated an order of the bankruptcy court or committed abuse or fraud on the Court. In 2013, Judge Margaret A. Mahoney considered the very same arguments LaFortune now advances and nonetheless held "that either the court has the power to impose sanctions on [a defendant] under its inherent power or it has the statutory ability to correct abuser or fraud on the court through section 105 of the Bankruptcy Code." *In re Brannan*, 485 B.R. 443, 451 (Bankr. S.D. Ala. 2013).

27.     Judge Mahoney reached this conclusion after considering a variety of cases considering the same argument LaFortune now asserts that section 105 does not create a private

Case 19-01020    Doc 41    Filed 09/06/19    Entered 09/06/19 23:13:50    Desc Main
Document    Page 11 of 20

cause of action.  *See In re Brannan*, 485 B.R. at 452 (collecting cases).  Rejecting the same

argument LaFortune now raises, Judge Mahoney concluded "[t]hose cases are not like this one,

as this case is based on the use of § 105 in conjunction with the court's contempt powers." *Id.*

(citations omitted).  Judge Mahoney further held in finding the plaintiff properly stated a claim

under section 105(a) for relief that "if the facts alleged by the plaintiffs are true, the plaintiffs

establish fraud on the court and establish ***an abuse of process*** as well.  ***Both***, as case law

supports, ***are claims that are premised on the inherent powers of a court***." *Id.* at 454 (emphasis

added).

28.      In holding that a civil contempt claim may be stated under section 105(a) and the

court's inherent contempt powers to remedy and prevent abuses of bankruptcy process, Judge

Mahoney in *In re Brannan* relied upon **three other Alabama bankruptcy decisions** that

reached similar conclusions:

> In a case in the Northern District of Alabama, Judge Stilson also found
> that § 105 "would be an appropriate vehicle to bring a claim for fraud on the court
> because it is necessary for the court to be able to address frauds perpetrated on
> it." *Holman v. Citimortgage, Inc. (In re Holman)*, 2010 WL 1880424, at *4
> (Bankr. N.D. Ala. 2010); *Canty v. Chase Home Finance, LLC (In re Canty)*, 2010
> WL 1880710, at *4 (Bankr. N.D. Ala. 2010).  Similarly, Judge Sawyer also found
> a cause of action under § 105 for fraud on the court or contempt was actionable.
> "Whether the Plaintiff's action is cast as one under § 105, the Court's inherent
> power, or an independent action for fraud on the court, a bankruptcy court may
> act to remedy the wrong complained of here." *Woodruff v. Chase Home Finance*,
> *LLC (In re Woodruff)*, 2010 WL 386209, at *9 (Bankr. M.D. Ala. 1010).

*In re Brannan*, 485 B.R. at 452.

29.      LaFortune's failure to cite any of the above four Alabama bankruptcy decisions

that recognize a party's right to relief under section 105(a) to prevent bankruptcy abuse and in

connection with a court's contempt powers is exacerbated by LaFortune's failure to cite

applicable, on-point Eleventh Circuit precedent as well.  In *In re McLean*, 794 F.3d 1313 (11th

Cir. 2015), the Eleventh Circuit considered the question of whether a bankruptcy judge could

utilize section 105(a) to enforce in a second bankruptcy case a discharge injunction issued in a debtor's prior bankruptcy case under a different case number. Similar to the *In re Brannan* court and other three Alabama court's reliance on the bankruptcy court's inherent contempt powers combined with section 105(a) abilities, the Eleventh Circuit concluded "any court—bankruptcy court included—has inherent powers to punish contempt against it, as a means of protecting itself as an institution." *Id.* at 1319.

30.     The Eleventh Circuit in *In re McLean* then found section 105(a) as the statutory basis for jurisdiction in the second bankruptcy case to consider a claim involving a violation of the discharge injunction issued in the first bankruptcy case. *See id.* at 1319–20. In other words, contrary to LaFortune's assertion, the Eleventh Circuit found that section 105(a) was in fact the appropriate vehicle for seeking contempt for a party's violations of the Bankruptcy Code. *See id.* at 1319 (holding "we need not rely on the bankruptcy court's inherent powers to find jurisdiction because bankruptcy courts also possess a statutory contempt power [in section 105(a)].") (citation omitted). Subsequently, in the *In re Failla* decision and in the identical context of addressing a debtor acting inconsistently with a prior surrender of property interests, the Eleventh Circuit reiterated that "[b]ankruptcy judges also have 'broad authority . . . to take any action that is necessary or appropriate to prevent an abuse of process.'" *In re Failla*, 838 F.3d 1170, 1179 (11th Cir. 2016) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (quoting 11 U.S.C. § 105(a) (internal quotation mark omitted)).

31.     The inescapable conclusion here is that not only do this Court's inherent contempt powers and section 105(a) powers provide a vehicle for Plaintiff to seek relief for abuses of bankruptcy process, but Plaintiff's second amended complaint states a plausible claim for such relief against LaFortune.

13

32.     LaFortune also suggests that this Court lacks the power to prevent her from reconvening her interest in the Property to 251 Gotham and she faults Plaintiff for lacking any authority to the contrary.  *See* Dkt. No. 29 at ¶¶ 47–48.  LaFortune's fixation on what remedies may or may not be appropriate is separate and apart from whether Plaintiff has stated a plausible claim for relief, which, as demonstrated above, Plaintiff has done.

33.     In any event, in the context of debtors surrendering interests in property during bankruptcy proceedings, there is ample authority demonstrating courts' ability to prevent the debtors from taking actions inconsistent with such surrenders.  Again, the Eleventh Circuit's seminal decision in *In re Failla* on the impact of surrendered interests in bankruptcy is dispositive of LaFortune's contrary position.  There, the Eleventh Circuit held:

> Bankruptcy courts have broad powers to remedy violations of the mandatory duties section 521(a)(2) imposes on debtors.  *See Taylor*, 3 F.3d at 1516.  Section 105(a) states that bankruptcy courts can "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), which includes section 521(a)(2).  Bankruptcy judges also have "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'"  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (quoting 11 U.S.C. § 105(a)).  *A debtor who promises to surrender property in bankruptcy court and then, once his debts are discharged, breaks that promise by opposing a foreclosure action in state court has abused the bankruptcy process*.  *See Guerra*, 544 B.R. at 710.

> If a bankruptcy court could only lift the automatic stay, then debtors could violate section 521(a)(2) with impunity.  The automatic stay is *always* lifted at the end of the bankruptcy proceedings, *see* 2 Bankruptcy Law Manual § 10:7 (5th ed.), so this remedy does nothing to punish debtors who lie to the bankruptcy court about their intent to surrender property.  While a creditor may be able to invoke the doctrine of judicial estoppel in state court to force debtors to keep a promise made in bankruptcy court, its availability does not affect the statutory authority of bankruptcy judges to remedy abuses that occur in *their* courts.  And *there is nothing strange about bankruptcy judges entering orders that command a party to do something in a nonbankruptcy proceeding*.  Bankruptcy courts "regularly exercise jurisdiction to tell parties what they can or cannot do in a non-bankruptcy forum."  *In re Lapeyre*, 544 B.R. 719, 723 (Bankr. S.D. Fla. 2016).  Just as the bankruptcy court may "order[ ] creditors who violate the automatic stay to take corrective action in the non-bankruptcy litigation," the bankruptcy court may

14

"order the Debtors to withdraw their affirmative defenses and dismiss their counterclaim in the Foreclosure Case." *Id.* The bankruptcy court had the authority to compel the Faillas to fulfill their mandatory duty under section 521(a)(2) not to oppose the foreclosure action in state court.

*In re Failla*, 838 F.3d at 1179 (emphasis added).

34.     Just as the Court in *Failla* had the authority to compel the debtors to fulfill their mandatory duty to surrender the property and not oppose a foreclosure, this Court (vested with the power of the District Court here) has the power to order LaFortune to not re-convey her interest in the Property to 251 Gotham. *See id.* Such a result is consistent with courts that have ordered debtors that have surrendered interests in property to relinquish possession of such property. *See, e.g.*, *In re Scott*, 567 B.R. 847, 852 (Bankr. S.D. Fla. 2017) (commanding a debtor "to comply with the [surrender order], relinquish possession of the homestead property, and cease all opposition in the state foreclosure action"). The *Failla* court's invocation of section 105(a) as one of the sources for the court's authority to prohibit actions taken inconsistent with a surrender is particularly noteworthy, *see id.*, given that LaFortune's challenge here is to Plaintiff's section 105 abuse of process claim against her, *see* Dkt. No. 29 at ¶¶ 50.

35.     In addition, Plaintiff has also sought relief in connection with its declaratory relief claim regarding LaFortune's surrender under 28 U.S.C. § 2202. This provision provides another source of authority for preventing a re-conveyance of the Property because "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment" and both LaFortune and 251 Gotham are parties to this action. *See* 28 U.S.C. § 2202. LaFortune's assertion that Plaintiff has failed to show authority for the Court to prohibit any re-conveyance to 251 Gotham is simply incorrect.

15

36.    Finally, LaFortune asserts as part of her Rule 12(b)(6) request that Plaintiff has failed to provide proof of authority for the proposition that she irrevocably surrendered her interest in the Property.   Again, the Eleventh Circuit's decision in *In re Failla* demonstrates the lasting impact of LaFortune's surrender.  *In re Failla*, 838 F.3d at 1179 ("A debtor who promises to surrender property in bankruptcy court and then, once his debts are discharged, breaks that promise . . . has abused the bankruptcy process.") (citation omitted).   Section 1327(a) also demonstrates that the plan confirmation order approving the surrender provision is binding on LaFortune. *See* 11 U.S.C. § 1327(a).

37.    As to LaFortune's challenge to Plaintiff's underlying proof of her surrender, Plaintiff has repeatedly cited to both the plan provision providing for the surrender as well as the plan confirmation order in the Joint Bankruptcy Case.  *See* Case No. 11-bk-04954 at Dkt. No. 2, p. 3 and Dkt. No. 18.   No more "proof" is required.   As recently noted by a sister court in Mississippi, a debtor like LaFortune's surrender of a property interest "is a fact evidenced by the agreed orders and confirmed Plan."  *In re House*, No. 16-51076-KMS, 2019 WL 267786, at *4 (Bankr. S.D. Miss. Jan. 18, 2019).

38.    No part of LaFortune's request for Rule 12(b)(6) relief has merit, and that request must be denied accordingly.

**D.    Plaintiff has standing to assert claims in this action.**

39.    LaFortune's challenge to Plaintiff's standing is yet another poorly concocted legal argument.  LaFortune surrendered her interest in the Property in her chapter 13 plan in the Joint Bankruptcy Case instead of repaying her mortgage debts to Plaintiff.  LaFortune then sold her interest in the Property to 251 Gotham for far less than the Property's value or the indebtedness owed to Plaintiff, and paid none of the sale proceeds over to Plaintiff.  At the time of the sale, LaFortune's co-obligor, Padilla, had a bankruptcy case of his own pending, which allowed

16

LaFortune to similarly benefit from the subsequent automatic stay preventing Plaintiff from exercising rights in the Property. LaFortune's suggestion that Plaintiff suffered no injury is unavailing.

40.     LaFortune's contention that Plaintiff's injury is not redressable is discussed above. Plaintiff seeks to have the Property transfer rescinded because it was inconsistent with the prior act of surrender and was unauthorized by this Court, having occurred during the pendency of the Padilla Bankruptcy Case albeit on an undisclosed basis. Returning the parties to the status quo prior to the transfer, and prohibiting the Borrower Defendants from taking actions inconsistent with the prior surrender, such as a re-conveyance or opposing foreclosure, *see In re Failla*, 838 F.3d at 1179, will afford Plaintiff the redress it seeks.

41.     More specifically, the Amended Complaint alleges that Plaintiff made a loan in the principal amount of $316,000 to LaFortune. That loan was secured by a mortgage granted by Borrower Defendants. The confirmed plain in Borrowers' Joint Bankruptcy Case provided that the Borrower Defendants surrendered the Property to Plaintiff. As the Eleventh Circuit held in *In re Failla*, a "debtor who decides to surrender his collateral must surrender to *both* the trustee and the creditor," 838 F.3d at 1175, and gives up her right or claim to the property surrendered, *id.* at 1177. Indeed, a debtor who has surrendered real property that is subject to a mortgage relinquishes the right to oppose foreclosure. *Id.*

42.     LaFortune's argument for dismissal is that the Borrower Defendants' conveyance of their interests in the Property to 251 Gotham was no detriment. In making this argument, LaFortune's focus appears to be predicated upon the fact that Plaintiff had the remedy of foreclosure both prior to and following the conveyance to Defendant. The concession that an alternative remedy was available concedes the existence of the harm.

17

43.     The bankruptcies of the Borrower Defendants resulted in Plaintiff having a range of legally protected interests and the conveyance to 251 Gotham altered or affected those rights in a way that caused Plaintiff injury for which this litigation may afford redress.  Whatever the merits of the decision of the New York State court, the defense of statute of limitations was not available to the Borrower Defendants in light of their surrender of the Property.  *Id.* at 1177; *see also In re Woide,* 730 Fed. App'x 731 (11th Cir. 2018) (*per curiam*) (affirming reopening of bankruptcy to enforce surrender); *Sayles v. Nationstar Mortgage, LLC*, No. 4D17-1324, 2018 WL 6344712 (Fla 4th DCA Dec. 5, 2018) (publication forthcoming) (borrower who had surrendered property was estopped from asserting affirmative defenses to foreclosure).

44.     In addition, the requirements of the Bankruptcy Code that a borrower schedule its assets and refrain from transferring property without authorization of the bankruptcy court serves to protect the interests of all creditors of the borrower. Padilla's circumvention of those requirements, and LaFortune's participation in transferring the Property outside of the bankruptcy process, resulted in precisely the sort of injury that the Bankruptcy Code was intended to prevent and put the Property one step more distant from recovery by Plaintiff. Plaintiff has standing to assert claims for relief against LaFortune in this action.

### III.    CONCLUSION

45.     LaFortune's arguments rely on facts of no consequence, misunderstandings of significant aspects of bankruptcy law, or, in the case of alleging no right of action exists for Plaintiff under section 105(a), incorrect statements of what the law is within the Eleventh Circuit. The Motion should therefore be denied.

WHEREFORE, Plaintiff requests that the Court deny the Motion and for such other and further relief to which the Court may find Plaintiff is entitled and that the Court deems just and proper under the circumstances.

**DATED** September 6, 2019.

Respectfully Submitted,

**LOCKE LORD LLP**

*/s/ Michael De Simone*
Brendan I. Herbert (*pro hac vice forthcoming*)
Florida Bar No. 76925
Michael De Simone (*admitted pro hac vice*)
Florida Bar No. 119739
777 South Flagler Drive, Suite 215-East
West Palm Beach, Florida 33401
(561) 833-7700 (Telephone)
(561) 655-8719 (Facsimile)
brendan.herbert@lockelord.com
michael.desimone@lockelord.com

Thomas A. Connop (*admitted pro hac vice*)
Texas Bar No. 04702500
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Facsimile)
tconnop@lockelord.com

Stephen J. Humeniuk (*admitted pro hac vice*)
Texas Bar No. 24087770
600 Congress Ave., Suite 2200
Austin, Texas 78701
(512) 305-4700 (Telephone)
(512) 305-4800 (Facsimile)
stephen.humeniuk@lockelord.com

**COUNSEL TO PLAINTIFF THE BANK OF
NEW YORK MELLON f/k/a THE BANK OF
NEW YORK, AS TRUSTEE FOR THE
CERTIFICATION OF CWALT, INC.,
ALTERNATIVE LOAN TRUST 2007-J2,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-J2**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on September 6, 2019, the forgoing document was served on all counsel of record identified below via this Court's CM/ECF filing system.

Mark S. Anderson
SHIRAK, BOWMAN, ANDERSON,
GILL & KADOCHNIKOV, LLP
80-02 Key Gardens Rd., Suite 600
New Gardens, NY 11415
manderson@abzlaw.com

***Counsel for Defendant 251 Gotham, LLC
and Defendant Kathy LaFortune***

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk